AGABITI BROS., PLAINTIFF-APPELLANT, v. JAMES CA-
TANA, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued February 4, 1952—Decided February 15, 1952.

Before Judges JACOBS, EASTWOOD and BIGELOW.

*Mr. Crawford Jamieson* argued the cause for the appellant (*Messrs. Jamieson & Walsh,* attorneys).

*Mr. Frank I. Casey* argued the cause for the respondent.

PER CURIAM. The plaintiff, whom we will call Agabiti, appeals from a judgment of the Mercer County Court. He had a sub-contract to remove the pavement of a part of State Street in Trenton, and to lower the grade of the street a little. His contract, like the principal contract, required that "all earth or other material excavated shall be removed from the street and disposed of by the contractor, excepting such material as may be of use to the City."

Agabiti agreed to sell and deliver the excavated materials to defendant Catana at a specified vacant lot or yard owned by the latter. For the materials and trucking, Catana promised to pay $2 a load. Agabiti delivered 559 loads, has been paid nothing and sued for the amount due, as well as for certain other items which are undisputed and need not be

mentioned further. Instead of $1,118, the jury awarded plaintiff only $400 for the 559 loads.

Defendant filed a counterclaim. The curbing at the sides of the roadway was of stone and was part of the materials removed from State Street by Agabiti. A strip along the centre of State Street, where there had been trolley tracks, was paved with Belgian blocks. While the tracks had been taken up at some previous time, a large number of steel ties remained in the street. The least valuable part of the materials bought by Catana was earth, broken asphalt, concrete, and wooden ties; the most valuable, the steel ties, the granite blocks and the curbing. Catana alleged that Agabiti delivered to him only a small fraction of the steel and stone, and counterclaimed for damages flowing from the failure to deliver. The jury awarded him $4,000.

■ Let us consider first the judgment on Agabiti's complaint. Agabiti agreed to deliver the excavated materials. He was at liberty to deliver a truckload of mingled dirt, steel and granite, or he might separate the materials and deliver a load of dirt, a load of steel ties and a load of granite. Whether mingled or separated, Catana was obligated to pay $2 a load. He accepted 559 loads and owes Agabiti $1,118, with interest from August 14, 1950. If Catana suffered damage from Agabiti's failure to deliver the rest of the materials, his loss must be included in the judgment on the counterclaim and not be used to reduce the amount due on Agabiti's complaint. As there is no dispute over the facts, the judgment on the complaint should be modified accordingly. *Lehigh Valley R. R. Co. v. McFarland,* 44 *N. J. L.* 674 (*E. & A.* 1882) ; *Lambert v. M. Satsky, etc., Co.,* 120 *N. J. L.* 391 (*Sup. Ct.* 1938).

Agabiti argues that the verdict on the counterclaim was against the weight of the evidence,—and we agree, at least as far as relates to the amount of damages.

■ The transaction in question was a contract for the sale of chattels. Catana testified that there was a market for the materials. "Was there a ready market for that

curbing? Well, it wasn't the biggest market as it was for the Belgian block or the steel, but it was selling." This was uncontradicted. The measure of damages was the difference between the contract price of $2 a load and the market value at the time and place set for ·delivery. *R. S.* 46:30–73. Special damages arising out of Catana's inability to fulfill agreements for resale which were made after the contract with Agabiti, do not enter into the assessment. *Pope v. Ferguson,* 82 *N. J. L.* 566 (*E. & A.* 1912); *Marcus & Co. v. K. L. Baking Co.,* 122 *N. J. L.* 202, 209 (*E. & A.* 1939); *Rich v. Bongiovanni,* 4 *N. J. Super.* 243 (*App. Div.* 1949).

■ Catana testified that he paced off the length and breadth of State Street and so reached an estimate of the amount of materials excavated; some materials ·he received, some he consented be disposed of elsewhere by Agabiti; the rest are the subject of his complaint. He testified to unit values. In order to resell, he said he would be subject to certain expenses for labor, etc., which must be deducted. But accepting all Catana's estimates as correct, the verdict is still excessive.

| | | |
|---|---|---|
| Curbing | 7,000 feet | |
| Received by Catana (75a) | 400 " | |
| | 6,600 " | |
| Market value @ 25c per foot (78a) | | $1,650. |
| Belgian blocks...... | | |
| Shortage, 91,000 (73a) blocks @ 5c | | 4,550. |
| Steel ties | 4,000 ties | |
| Received (75a) | 170 " | |
| | 3,830 " | |
| Market value @ 30c each | | 1,149. |
| | | $7,349. |
| Estimated expense (80a) | | 3,900. |
| Damages | | $3,449. |

It is impossible on the evidence to sustain a verdict of $4,000. We might add, still accepting Catana's version, that it is very difficult to follow or accept his estimate of the

shortages, especially the Belgian blocks. Again, it is not clear that in the anticipated expense of $3,900 is included the contract price of $2 a load. We have considered whether the new trial should be confined to damages and have concluded it should not. So much immaterial evidence was presented to the jury, especially about other deals between the parties, and the proofs on the matter in litigation were so hazy, that there must be a new trial on all issues arising from the counterclaim. An effort further to define the issues by a pretrial conference might be worth while.

Judgment on complaint modified and one-half of the costs on the appeal will be allowed plaintiff in connection with the modification. Judgment on counterclaim reversed without costs.